**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dew Wealth Management LLC, | No. CV-25-01416-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Wesley Leftwich, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Rule 41(a)(2) motion for voluntary dismissal without prejudice. (Doc. 21.) Plaintiff filed this motion only after Defendant moved for summary judgment (Doc. 13) and after Plaintiff then filed, but did not file a reply in support of, a motion for Rule 56(d) relief (Doc. 14). Defendants partially oppose Plaintiff's dismissal request, arguing that (1) the dismissal should be with prejudice and (2) Plaintiff should be required to pay Defendants' reasonable attorneys' fees. (Doc. 22.)

For the reasons that follow, the Court agrees with Defendants that any voluntary dismissal should be subject to both of the conditions identified by Defendants. Accordingly, through this order, the Court will give Plaintiff a 14-day deadline to either accept dismissal on those conditions or withdraw its motion. *Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 930-31 (9th Cir. 1986) ("Under [Rule 41(a)(2)], a plaintiff has the choice between accepting the conditions and obtaining dismissal and, if he feels that the conditions are too burdensome, withdrawing his dismissal motion and proceeding with the case on the merits.") (citation omitted).

# BACKGROUND

On March 31, 2025, Dew Wealth Management LLC ("Plaintiff" or "Dew") sued Defendants in Maricopa County Superior Court. (Doc. 1-1.)

On April 28, 2025, Defendants removed the action. (Doc. 1.)

On May 23, 2025, Dew filed the First Amended Complaint ("FAC"). (Doc. 11.) The FAC alleges as follows. Dew, "an advisory firm providing private wealth management and financial planning services, education, and training to high-income individuals and entrepreneurs," previously employed Defendant Wesley Leftwich ("Leftwich"), first as an "Advisor" and then as a "Senior Advisor." (*Id.* ¶¶ 6-7.) As part of his promotion, Leftwich signed a non-solicitation agreement ("the Agreement"), in which he agreed not to "recruit, solicit, hire, employ, engage or retain the services of any Company Employee" or "encourage, induce or convince any Company Employee or Business Associate . . . to end, reduce, or change his/her/its relationship with the Company" during Leftwich's employment and for 12 months thereafter. (Doc. 11-1 at 23 § 2.5.)[1] In May 2024, Leftwich resigned and began working for non-party Socha Capital Wealth Strategies ("Socha"), "a competitor of Dew." (Doc. 11 ¶¶ 34, 35.) During the year following his resignation, Leftwich allegedly "engaged and assisted others at Socha to engage in the recruitment, solicitation, hiring, employment, engagement, or retention and/or the encouragement, inducement, or convincing of at least one Dew Company Employee," non-party Stephen Mandracchia ("Mandracchia"), "to end, reduce, or change his relationship with Dew." (*Id.* ¶ 37.) The FAC names Leftwich and his wife (together, "Defendants") as defendants and asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract or business relations. (*Id.* at 10-13.)

On June 6, 2025, Defendants filed an answer to the FAC. (Doc. 12.)

On June 16, 2025, Defendants filed a motion for summary judgment. (Doc. 13.) The motion asserts that "Leftwich has carefully adhered to all purported requirements in

---

[1] "Company Employee" and "Business Associate" are defined in the Agreement. (Doc. 11-1 at 23 § 2.5.)

the Agreement with Dew and has not directly or indirectly engaged or assisted anyone in recruiting, soliciting, hiring, employing, engaging, or retaining the services of any Dew employee." (*Id.* at 3.) The motion requests attorneys' fees, both under the Agreement's provision that "[t]he prevailing party in any legal action relating or touching upon this Agreement is entitled to recover reasonable attorneys' fees and costs" (Doc. 11-1 at 26 § 3.7) and under A.R.S. § 12-341.01. (Doc. 13 at 16.)

The motion is supported by several attachments. One attachment is a LinkedIn message thread from January 8-10, 2025 in which Mandracchia asked Leftwich how his "new gig" at Socha was going, asked what Socha advisors are paid, and noted dissatisfaction with feeling "underpaid" at Dew—to which Leftwich responded, "I should probably not share anything that could be construed as 'recruiting' employees due to my non-solicit through end of May; I've made it 8 months doing it the right way, need to wait another 4 . . . hopefully you respect that! I'm sure it really isn't a bid [sic] deal, just want to dot my Is and cross my Ts lol." (Doc. 13-2.) Mandracchia replied, "No sweat man, was just curious," and later added, "If it's cool with you, let's chat after May," to which Leftwich said, "Yeah that'd be great! It'll be here before we know it." (*Id.*)

Another attachment is a declaration from Jeff Socha ("Mr. Socha"), the CEO and founder of Socha, who declares that after Mandracchia reached out to Leftwich via LinkedIn in early January 2025, Mandracchia reached out "directly" to Mr. Socha "to inquire about employment at Socha," interviewed with Mr. Socha and another lead planner, and was offered a position at Socha, but "Leftwich was not involved in the interview process for Mandracchia whatsoever." (Doc. 13-3 ¶¶ 3-5.) Socha's declaration also specifies that Mandracchia "accepted employment with Socha on January 23, 2025." (*Id.* ¶ 6.)

Another attachment is Leftwich's own declaration, which affirms that he abided by the terms of the Agreement at all times. (Doc. 13-1 ¶¶ 7-19.) More specifically, Leftwich avows that "[t]he first time [he] spoke to Mandracchia after exchanging the LinkedIn messages . . . was after Mandracchia provided his two-weeks' notice to Dew," which notice

was provided "on or about January 31, 2025." (*Id.* ¶¶ 16-17.) Leftwich clarifies that he exchanged text messages with Mandracchia beginning on February 5, 2025 and "spoke with Mandracchia at an in-person event held by Socha in Austin, Texas on February 7, 2025." (*Id.* ¶¶ 18-19.)

Finally, yet another attachment is a February 5, 2025 text message thread between Mr. Socha and Dew senior advisor Nate Birkholz, in which Mr. Socha stated, "[J]ust thought I should let you know [Mandracchia] reached out to me and pursued this opportunity," adding that Mr. Socha "didn't go after him" and "if anything tried to talk him out of coming," to which Birkholz replied, "[Mandracchia] mentioned that and I believe him. Thanks for adding your confirmation." (Doc. 13-6.)[2]

On July 16, 2025, Dew filed a Rule 56(d) motion requesting an order denying Defendants' motion for summary judgment without prejudice or deferring consideration "until such time that [Plaintiff] has had a fair opportunity to take discovery and gather evidence necessary to oppose the Motion." (Doc. 14 at 2.) The premise of this motion is that although Defendants' "self-serving" declarations and other evidence may appear to show that Leftwich did not engage in any solicitation-related communications with Mandracchia before January 31, 2025, "Dew's own preliminary information suggests there was additional communication between Leftwich and Mandracchia prior to Mandracchia's resignation, and that Leftwich's role in assisting Socha in the recruitment and solicitation of Mandracchia was more active than he now claims." (*Id.* at 5.)

The sole piece of evidence provided by Dew to support this suspicion is a declaration from Bryce Keffeler ("Keffeler"), Dew's managing partner. (Doc. 14-1.) The declaration states that Keffeler conducted an exit interview with Mandracchia on Mandracchia's last day of work at Dew (*i.e.*, February 13, 2025); that during this exit interview, Keffeler expressed his "concerns about Mandracchia's work/life balance upon joining Socha" and his "hope that Mandracchia was going in to his new job with full

---

[2] Defendants also argue that, at any rate, Mandracchia did not fall within the scope of employees Leftwich could not solicit, as he "was not on Leftwich's pod or team" (Doc. 13 at 10-11), and that the Agreement is unenforceable to the extent it punishes innocent conduct and contains an unlimited geographic scope (*id.* at 11-14).

- 4 -

information"; and that Mandracchia replied that Leftwich and Mr. Socha had both told him that Socha wanted "hard core" people. (*Id.* ¶¶ 5-8.) Keffeler avows that he "understood Mandracchia's statements to mean that Mandracchia had engaged in conversations with both Leftwich and Socha regarding the prospect of joining Socha prior to providing his notice of resignation to Dew." (*Id.* ¶ 9.)

On July 22, 2025, Defendants responded to Dew's Rule 56(d) motion. (Doc. 15.) Defendants emphasize that Keffeler states in his declaration "that he spoke with Mandracchia on February 13, 2025—*over three weeks after* Mandracchia signed his offer letter with Socha (January 23), *two weeks after* Mandracchia resigned from Dew (January 31), and *one week after* Mandracchia attended the in-person event for Socha with Leftwich in Austin, Texas (February 7)." (*Id.* at 7.) Defendants thus argue that Keffeler's conclusion "that Mandracchia had engaged in conversations with both Leftwich and Socha regarding the prospect of joining Socha prior to providing his notice of resignation to Dew on January 31, 2025" lacks "any stated basis." (*Id.*) Defendants also attached a declaration from Mandracchia (who worked for Socha for one month and now works elsewhere) stating that Leftwich never attempted to solicit him to join Socha or to encourage him to leave Dew; that the LinkedIn messages accurately show that Leftwich would not discuss Leftwich's new job due to the Agreement; that he "independently reached out" to Socha; that Leftwich was not involved in his hiring process at Socha; that after resigning from Dew and accepting an employment offer from Socha, he "attended an in-person event hosted by Socha in Austin, Texas," which "began on February 7, 2025"; and that during his exit interview with Keffeler on February 13, 2025, any references he made to conversations with Leftwich related to conversations that took place after he resigned from Dew and accepted an offer of employment with Socha. (Doc. 15-1 ¶¶ 1-13.) Defendants argue that the "undisputed record affirmatively negates any solicitation occurred and precludes Rule 56(d) relief." (Doc. 15 at 9.)

On July 29, 2025, the parties stipulated to extend Dew's deadline to file a reply in support of its Rule 56(d) motion to August 4, 2025. (Doc. 16.)

On August 4, 2025, Dew did not file a reply. Instead, Dew filed a motion to "(1) refer this matter to a magistrate judge for a court-ordered settlement conference, and (2) extend [its] deadline to file its reply in support of its Motion for Rule 56(d) Relief until 14 days after the settlement conference is completed." (Doc. 18.)

On August 5, 2025, Defendants filed a response opposing a deadline extension and asserting that settlement efforts "have already run their course." (Doc. 19.)

That same day, the Court denied Dew's request to refer the matter to a magistrate judge for a settlement conference, due to the parties' lack of agreement, and extended the deadline for Dew to file a reply in support of its Rule 56(d) motion to August 11, 2025. (Doc. 20.)

On August 11, 2025, Dew did not file a reply. Instead, Dew filed the pending Rule 41(a)(2) motion to voluntarily dismiss this case without prejudice. (Doc. 21.)

On August 14, 2025, Defendants filed a partial opposition to the motion for voluntary dismissal without prejudice, asserting that the dismissal should be with prejudice and that "[r]egardless of whether dismissal is with or without prejudice, Defendants remain entitled to seek attorneys' fees and costs." (Doc. 22 at 3-8.)

On August 21, 2025, Dew filed a reply in support of its Rule 41(a)(2) motion. (Doc. 23.) Neither side requested oral argument with regard to that motion.

**DISCUSSION**

I.   <u>Dismissal With Or Without Prejudice</u>

   A.   **Legal Standard**

Rule 41(a)(2) allows a plaintiff to request dismissal "by court order, on terms that the court considers proper," and specifies that "[u]nless the order states otherwise," the dismissal "is without prejudice." *Id.* Motions for voluntary dismissal under Rule 41(a)(2) are "addressed to the district court's sound discretion." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996).

"When ruling on a motion to dismiss without prejudice, the district court must determine whether the defendant will suffer some plain legal prejudice as a result of the

dismissal." *Id.* "'Legal prejudice' is a term of art: it means prejudice to some legal interest, some legal claim, some legal argument." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1280 (9th Cir. 2023) (cleaned up). "[T]he threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice." *Westlands*, 100 F.3d at 96. "[T]he expense incurred in defending against a lawsuit does not amount to legal prejudice." *Id.* at 97. "[T]he mere inconvenience of defending another lawsuit does not constitute plain legal prejudice, and plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." *Kamal*, 88 F.4th at 1280 (cleaned up). "[L]os[ing] a res judicata defense . . . does not amount to legal prejudice." *Id.* at 1285. "Legal prejudice requires something more," such as "the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." *Id.* at 1282-83. "Although case law does not articulate a precise definition of 'legal prejudice,' the cases focus on the rights and defenses available to a defendant in future litigation." *Westlands*, 100 F.3d at 97. "[T]he district court must determine whether granting a motion for dismissal without prejudice would result in legal prejudice to the defendant and, if not, the motion should be granted." *Kamal*, 88 F.4th at 1282.

  B. **Analysis**

  Defendants identify four reasons why Dew's dismissal-without-prejudice request should be denied: (1) "the ability to evade a response to a motion for summary judgment that would render judgment in favor of the defendants constitutes legal prejudice"; (2) "Dew has apparently abandoned its claims"; (3) "Dew's failure to explain why it requests dismissal without prejudice is a basis to dismiss this action with prejudice"; and (4) "Dew's request for dismissal underscores that this lawsuit was filed without verifying its central allegation, without performing even the most basic pre-suit diligence that would have revealed its claims to be unfounded, and as part of a broader effort to target a non-party competitor (Socha Capital)," such that the "combination of unverified allegations, demonstrably false factual assertions, and an improper competitive motive strongly

1  supports dismissal with prejudice." (Doc. 22 at 3-6.)

2  Beginning with Defendants' first argument, the Ninth Circuit has repeatedly stated that "a district court should consider whether to dismiss a party's claims under Rule 41 *with*, rather than without, prejudice when the moving party seeks to dismiss its claims to avoid a near-certain adverse ruling." *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 2021 WL 5823707, *2 (9th Cir. 2021). *See also Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F. App'x 664, 666 (9th Cir. 2008) ("A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling."); *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988) ("[S]ince the magistrate had already issued his report and recommendation when the motion was filed, the district court's refusal to use its discretion to dismiss the petition under Fed.R.Civ.P. 41(a)(2) is reasonable."). In *Biden v. Ziegler*, 2025 WL 1720182 (C.D. Cal. 2025), the court elaborated upon why a voluntary dismissal to avoid a probable adverse ruling could constitute legal prejudice to the defendant: "Defendants have already prepared a motion for summary judgment and exchanged this document with Plaintiff's counsel . . . . This motion effectively gives Plaintiff a roadmap to Defendants' most important legal arguments, and provides a prejudicial advantage given that Plaintiff has not yet had to file an opposition. If allowed to refile this same case in the future, Plaintiff could develop new facts, contact new witnesses, explore and include additional claims, and thereby gain a strategic advantage in opposing the factual and legal defenses presented in Defendants' motion. That is more than inconvenience or additional expense—it represents real legal prejudice to Defendants in defending refiled litigation." *Id.* at *2.

It is apparent to the Court that the purpose of Dew's dismissal request is to avoid a near-certain adverse ruling. At the time Dew filed its dismissal request, there were two pending motions: (1) Defendants' summary judgment motion; and (2) Dew's motion for Rule 56(d) relief. To have any hope of prevailing on either motion, Dew needed to identify a reason to suspect that the discovery process might be useful in uncovering evidence that would somehow contradict the sworn statements of Leftwich, Mandracchia, and Mr.

Socha—which appear to be corroborated by the LinkedIn exchange and other documentary evidence—that no solicitation by Leftwich occurred.

Dew identified the Keffeler declaration as its sole basis for believing that the discovery process would be useful for that purpose. But as Defendants persuasively explain in their response to the Rule 56(d) motion, the Keffeler declaration does not provide any reasonable basis for doubting the veracity of the declarations from Leftwich, Mandracchia, and Mr. Socha. It merely shows that Leftwich and Mandracchia engaged in conversations about the "hard core" nature of the work at Socha at some unspecified point before the date of Mandracchia's exit interview on February 13, 2025. (Doc. 14-1 ¶ 8.) But unless those conversations took place before January 31, 2025, when Mandracchia provided his notice of resignation, they would not qualify as solicitation even under Dew's theory of the case. (*Id.* ¶ 9.) And Leftwich already acknowledged, in the declaration he filed in support of the summary judgment motion, that he engaged in various conversations with Mandracchia after Mandracchia provided two weeks' notice to Dew on January 31, 2025, including conversations on February 5 and 7, 2025. (Doc. 13-1 ¶¶ 17-19.)

Under these circumstances, there was a near certainty that Dew would have lost on its Rule 56(d) motion had it not short-circuited the briefing process by filing a motion for voluntary dismissal in lieu of a reply. *State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998) ("[D]enial of a Rule [56(d)] application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation.") (cleaned up); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) ("Courts will deny Rule [56(d)] discovery applications where the moving party's evidence affirmatively negates the factual issues which the opposing party claims remain controverted. . . . The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists."). Furthermore, even if the Court had granted the Rule 56(d) motion and authorized further discovery, there was a near certainty that Dew would have eventually lost at summary judgment—on this record, it is speculative to the extreme that

further discovery would have uncovered evidence sufficient to create a jury issue on the solicitation issue.

The unpersuasive nature of Dew's explanation for its decision to move for dismissal, rather than continue litigating, underscores the conclusion that the dismissal request was motivated by a desire to avoid a near-certain adverse ruling. *Compare Creative Labs, Inc. v. Orchid Tech.*, 1997 WL 588923, *2 (N.D. Cal. 1997) (acknowledging that "voluntary dismissal without prejudice may not be appropriate where the sole reason for plaintiff's request for dismissal is apprehension regarding a possible adverse ruling on a pending motion" but declining to apply this rule because "plaintiff has identified a substantial reason, apart from wanting to avoid a possible adverse ruling, for not proceeding with this case"). Dew's motion states that "[b]efore filing this action, Dew contacted Mandracchia to gather additional information" and although "Mandracchia was required to cooperate with Dew in providing this information under the cooperation clause of his own employment contract," he did not respond. (Doc. 21 at 2.) Dew asserts that "continuing the litigation would require expansion—including amending the Complaint to bring claims against Mandracchia for breach of his own contractual obligations to Dew," but rather than filing a motion for leave to amend, Dew tried to settle "to avoid the burden of continued litigation" and then sought voluntary dismissal. (*Id.* at 3.) This explanation is unpersuasive because a plaintiff's asserted discovery of new, related claims against a third party would ordinarily create a further incentive to litigate, not an incentive to dismiss.

Dew's reply brief attempts to supply the missing rationale by asserting that Dew's claims against Mandracchia "are subject to arbitration under Mandracchia's contract" and that "Dew should not be required to litigate these integrally related issues on two fronts—in arbitration separately from the litigation here." (Doc. 23 at 2.) But this explanation remains unpersuasive. No one is forcing Dew to pursue claims against Mandracchia, and if Dew chose to pursue those claims in an arbitration proceeding, that would not have any bearing on whether Dew could continue this action against Defendants. Dew, "an advisory firm" that employs "a team of executives and advisors located in Arizona and around the

country to manage its client base nationwide" (Doc. 11 ¶ 6), can likely manage the burden of two simultaneous litigations. At any rate, the possibility of pursuing separate claims against a separate party for breach of a separate contract does not impair the current action or make its continued litigation less desirable.

Because the purpose of Dew's dismissal request was to avoid a near-certain adverse ruling, the Court concludes that any voluntary dismissal should be with prejudice. Authorizing a without-prejudice dismissal under this specific circumstance would create the sort of cognizable legal prejudice, above and beyond the mere expenditure of legal fees or threat of future litigation, that Rule 41(a)(2) is meant to avoid. *Terrovona*, 852 F.2d at 429; *Kurin, Inc.*, 2021 WL 5823707 at *2; *Maxum Indem. Ins. Co.,* 299 F. App'x 664 at 666; *Ziegler*, 2025 WL 1720182 at *2.

Although the analysis could end there, the Court will proceed to analyze Defendants' remaining arguments in an abundance of caution and in an effort to make a complete record in the event of appeal. Defendants' second argument ("Dew has apparently abandoned its claims") alone sheds little light on whether Defendants would suffer plain legal prejudice if Dew's claims were dismissed without prejudice. Voluntary dismissal, by definition, works as an abandonment of the claims, at least within the context of the present action. If Defendants mean to assert that Dew does not appear to intend to bring the claims again in a future action, that appears to be to Defendants' benefit—it is difficult to understand how such a state of affairs could amount to legal prejudice to Defendants. If, on the other hand, Defendants' abandonment argument is that Dew failed to respond to Defendants' pending motion for summary judgment and failed to submit a reply in support of its Rule 56(d) motion, this appears to merely be a corollary of Defendants' first argument (that Dew is attempting to evade an unfavorable ruling), which is addressed above.

As for Defendants' third argument ("Dew's failure to explain why it requests dismissal without prejudice is a basis to dismiss this action with prejudice"), the Court agrees that Dew did not set forth a persuasive rationale for its dismissal request. As

discussed above, this omission helps inform whether the dismissal request was intended to avoid a near-certain adverse ruling, which is a recognized basis in the Ninth Circuit for denying a request to dismiss without prejudice.

With that said, to the extent the parties have identified certain district-court decisions identifying factors such as "the defendant's effort and expense involved in preparing for trial," "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," and "insufficient explanation of the need to take a dismissal" as bases for denying a request to dismiss without prejudice, those factors derive from an Eighth Circuit case, *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987). Notably, the Ninth Circuit has never endorsed those bases in a published decision and has expressly "decline[d] to adopt the Eighth Circuit's analysis in *Paulucci*." *Westlands*, 100 F.3d at 97. The Ninth Circuit has also held that at least one of the enumerated factors in *Paulucci* is *not* a proxy for legal prejudice. *Id*. ("We have explicitly stated that the expense incurred in defending against a lawsuit does not amount to legal prejudice."). Another Ninth Circuit opinion suggests a wholesale rejection of these factors, *Kamal*, 88 F.4th at 1282 ("Defendants argue that when deciding whether dismissal should be with or without prejudice, the district court may consider other factors 'not rising to the level of legal prejudice,' such as 'the defendant's effort and expense involved in preparing for trial' and 'excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action,' and may dismiss with prejudice if warranted by these considerations. But we have already rejected similar arguments."), although *Westlands* seems to contemplate that delay could be a factor, albeit not one that was at play in that case. *Westlands*, 100 F.3d at 97.

At any rate, to the extent a particular factor has not been expressly embraced or rejected by the Ninth Circuit, the guiding principle is set forth in *Westlands*: "Although case law does not articulate a precise definition of 'legal prejudice,' the cases focus on the rights and defenses available to a defendant in future litigation." *Id.* For that reason, Defendants' fourth argument ("this lawsuit was filed without verifying its central allegation, without performing even the most basic pre-suit diligence that would have

1 revealed its claims to be unfounded, and as part of a broader effort to target a non-party competitor") is also, alone, unavailing. The Federal Rules provide other mechanisms for dealing with cases improvidently brought, but the propriety of bringing (or continuing) a frivolous or harassing lawsuit does not appear to be a consideration in the Rule 41(a)(2) analysis. Defendants cite no authority for the proposition that a plaintiff's failure to conduct an adequate pre-suit investigation could establish that a dismissal without prejudice would cause the defendant to suffer "plain legal prejudice." In the case Defendants cite, the district court concluded that there was no legal prejudice even though the claim was "frivolous" and "added without diligent research." *Burnette*, 828 F. Supp. at 1443-44.

II. <u>Attorneys' Fees</u>

    A.   **The Parties' Arguments**

The Agreement provides that "[t]he prevailing party in any action arising from or relating to this Agreement shall be entitled to its/his/her reasonable attorney fees and court costs." (Doc. 11-1 at 26 § 3.7.) Defendants seek attorneys' fees under that provision and/or pursuant to A.R.S. § 12-341.01. (Doc. 13 at 16; Doc. 22 at 7-8.) Defendants argue that "this Court is bound to follow Arizona law in determining Defendants' contractual rights to attorneys' fees and costs" and that "Arizona law recognizes that a voluntary dismissal (with or without prejudice) entitles Defendants to attorneys' fees and costs" and "further provides that Defendants' contractual right to reasonable attorneys' fees and costs is not subject to discretion." (Doc. 22 at 8.)

Dew argues that "[w]hile there is no technical requirement to confer before a motion for summary judgment is filed, judges and parties in this District are generally expected to confer with one another on litigation issues to avoid expense," and because Defendants did not take that approach, Dew should not "be saddled" with attorneys' fees. (Doc. 23 at 2-3.) In the alternative, Dew argues that "[c]ourts in the Ninth Circuit have consistently denied fee awards where dismissal without prejudice leaves the question of prevailing party unresolved." (*Id.* at 5.)

B. **Analysis**

"The trial court has discretion whether to award attorneys' fees under A.R.S. § 12-341.01; but, unlike fees awarded under A.R.S. § 12-341.01(A), the court lacks discretion to refuse to award fees under a contractual provision." *Risas Holdings LLC v. Tackett*, 2020 WL 7038300, *2 (Ariz. Ct. App. 2020). "But whether pursuant to A.R.S. § 12-341.01 or an attorneys' fees clause in a contract, the determination of which party is the 'successful' or 'prevailing' party for the purposes of awarding attorneys' fees remains within the discretion of the trial court and will not be disturbed on appeal if any reasonable basis for it exists." *Id.* The Court may consider "the totality of the litigation" when determining which party, if any, is the "successful" or "prevailing" party in a particular lawsuit. *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 505 (Ariz. Ct. App. 1980).

Because A.R.S. § 12-341.01, which provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees," is permissive, whereas the fees clause of the Agreement, which provides that "[t]he prevailing party in any action arising from or relating to this Agreement shall be entitled to its/his/her reasonable attorney fees and court costs" (Doc. 11-1 at 26 § 3.7), is mandatory, the Court will limit its analysis to the fees clause of the Agreement.[3] Thus, the various factors that courts may consider when evaluating whether to grant fees pursuant to § 12-341.01—*e.g.*, the merits of the unsuccessful party's position, whether the litigation could have been settled, whether the unsuccessful party would suffer hardship, whether the successful party prevailed with respect to all relief sought, the novelty of the legal question presented, and whether a fees award would discourage future tenable suits, *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)—are not relevant here.

Most of Dew's arguments in opposition to an award of attorneys' fees are premised on the notion that the dismissal here will be without prejudice. (Doc. 23 at 5-6 [arguing that Defendants cannot be considered the prevailing parties because "[t]hey did not secure

---

[3] The Agreement specifies that it "shall be governed and construed in accordance with the laws of the State of Arizona." (Doc. 11-1 at 26 § 3.7.)

dismissal of any claim on the merits"].)  But as discussed in Part I above, the Court concludes that any voluntary dismissal must be based on the condition that it is with prejudice.  Defendants will clearly qualify as the prevailing parties if they obtain a with-prejudice dismissal of all of Dew's claims.  Also, because a fee award under the Agreement is mandatory, Defendants' asserted failure to engage in meet-and-confer efforts before moving for summary judgment does not provide a basis for rejecting their fee request.

Furthermore, even if the Court were in agreement with Dew on the with-versus-without-prejudice issue, it would still conclude that Defendants are the prevailing parties and thus entitled to an award of reasonable attorneys' fees.  "When interpreting state law, [federal courts] are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1124 (9th Cir. 2021).  Federal courts should "ordinarily accept the decision of an intermediate [state] appellate court as the controlling interpretation of state law, unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Id.* (cleaned up).

The Arizona Supreme Court has not decided whether a defendant can be (or necessarily is) a "successful" or "prevailing" party when the plaintiff voluntarily dismisses the lawsuit and the dismissal is without prejudice.[4]  However, the Arizona Court of Appeals has considered the issue and held that "where a plaintiff timely and voluntarily dismissed without prejudice his complaint . . . his action *does not preclude* the court from subsequently awarding attorneys' fees to a defendant." *Vicari v. Lake Havasu City*, 213 P.3d 367, 374 (Ariz. Ct. App. 2009) (emphasis added).  *See also State v. Mauceli*, 2018 WL 6684216, *3 (Ariz. Ct. App. 2018) (citing *Vicari* for the proposition that "voluntary

---

[4] Arizona cases use the terms "successful party" and "prevailing party" interchangeably. *State ex rel. Arizona Dep't of Revenue v. Tunberg*, 464 P.3d 688, 694 (Ariz. Ct. App. 2020); *see also Martin v. Weed Inc.*, 2021 WL 8013764, *3 (D. Ariz. 2021) ("Arizona courts apply the same standards for determining who is the 'prevailing party' under a contractual attorneys' fees provision as for determining which party is the 'successful party' entitled to fees under A.R.S. 12-341.01(A).").

- 15 -

dismissal of the State action, even without prejudice, does not preclude the superior court from awarding attorney fees to Mauceli"); *Southwest Fertility Ctr., Ltd. v. Medscan Diagnostic Sys., Inc.*, 2013 WL 440640, *4 (Ariz. Ct. App. 2013) ("[A] party obtaining dismissal without prejudice may be a successful party eligible for an attorneys' fee award under A.R.S. § 12–341.01(A).").[5] Particularly given Dew's sparse briefing on the issue, the Court does not find "convincing evidence" that the Arizona Supreme Court would depart from the holding of *Vicari*. *See generally Medical Protective Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013) ("Arizona appellate courts have repeatedly held that an adjudication on the merits is not a prerequisite to recovering attorney's fees under Section 12–341.01.") (cleaned up). Thus, even if the dismissal here was without prejudice, the Court would conclude that Defendants are the prevailing parties under the circumstances of this case.

Finally, to the extent the parties' motion papers raise disputes concerning the amount of fees that may be awarded and/or whether all of the fees that Defendants incurred in defending this action are reasonable (Doc. 23 at 6), those disputes are premature and not fully developed on the current record. With that said, the Court will require Defendants to provide notice to Dew of the amount of fees that Defendants intend to seek, which may aid Dew in making an informed choice as to whether to proceed with the dismissal request.

…

…

---

[5] Other decisions by the Arizona Court of Appeals suggest that a dismissal without prejudice necessarily transforms the defendant into the successful party, at least in a contract action where the dismissal was not voluntary. *Britt v. Steffen*, 205 P.3d 357, 360 (Ariz. Ct. App. 2008) ("To summarize, a defendant against whom a contract action is dismissed without prejudice for lack of prosecution is the 'successful party' in that action and qualifies for a possible award of attorneys' fees pursuant to A.R.S. § 12–341.01(A)."); *HTA-SC Boswell Med. LLC v. Sun Health Servs.*, 2019 WL 439294, *3 (Ariz. Ct. App. 2019) (stating that "[a] defendant in a breach of contract claim is considered a prevailing party when the action is dismissed without prejudice, even if the dismissal does not operate as a dismissal on the merits," in an action where the plaintiff's contract claims were dismissed without prejudice on ripeness grounds). *See also Sandstone Marketing, Inc. v. Precision Converters, Inc.*, 2012 WL 6217539, *1 (D. Ariz. 2012) (stating that "[a] defendant against whom a contract action is dismissed without prejudice is considered a successful party" in an action where the plaintiff's contract claims were dismissed without prejudice because they were subject to mandatory arbitration) (cleaned up).

III. Conclusion

As noted at the outset of this order, under Rule 41(a)(2), "a plaintiff has the choice between accepting the conditions and obtaining dismissal and, if he feels that the conditions are too burdensome, withdrawing his dismissal motion and proceeding with the case on the merits." *Lau*, 792 F.2d at 930-31 (citation omitted). *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 41 (2024) ("Courts sometimes refer to the terms and conditions imposed as the 'quid pro quo' of allowing the plaintiff to dismiss his suit. The court must give the plaintiff notice of what the conditions will be and an opportunity to withdraw the motion. In other words, the plaintiff is not required to accept the conditions proposed by the district court but may instead choose to proceed to trial on the merits by withdrawing the motion to dismiss within a reasonable time."). For the reasons discussed above, the Court concludes that any voluntary dismissal must be (1) with prejudice and (2) result in an award of reasonable attorneys' fees to Defendants as the prevailing parties.

Accordingly,

**IT IS ORDERED** that:

1. Within 7 days of the issuance of this order, Defendants must provide Dew with an itemized list of the attorneys' fees that Defendants intend to seek.

2. Within 14 days of the issuance of this order, Dew must file a notice that either accepts the two conditions set forth above or withdraws the dismissal motion.

3. If Dew withdraws its dismissal motion, it must file a reply in support of its pending Rule 56(d) motion in tandem with filing its withdrawal of its dismissal motion.

Dated this 20th day of October, 2025.

Dominic W. Lanza
United States District Judge